631 So.2d 167 (1994)
Luther Frank GREEN
v.
STATE of Mississippi.
No. 91-KA-0170.
Supreme Court of Mississippi.
January 20, 1994.
*170 Bobby T. Vance, Batesville, for appellant.
Michael C. Moore, Atty. Gen., Wayne Snuggs, Asst. Atty. Gen., Jackson, Ellen Y. Dale, Ridgeland, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and PITTMAN, JJ.
SULLIVAN, Justice, for the Court:
Luther Frank Green was indicted for the murder of Michael Wayne Camp, who was shot outside the City Finance Company in Water Valley, Mississippi, on June 25, 1990. The jury convicted Green of manslaughter and the trial judge sentenced Green to serve a term of twenty (20) years in the custody of the Mississippi Department of Corrections. Green was also ordered to make restitution to Camp's family for medical and funeral expenses, and to reimburse the county for his attorney fees and court costs. The trial judge also found Green had a vested right to workers' compensation proceeds and ordered a lien placed against them to secure payment of the restitution and attorney fees ordered.
Green's motion to proceed on appeal in forma pauperis was overruled, and the trial judge found Green was not an indigent. Green appeals to this Court and assigns the following as error:
1. The State of Mississippi did not prove all the elements of a prima facie case of murder beyond a reasonable doubt, therefore the trial court erred by not granting Green's motion for a directed verdict;
*171 2. The trial court denied Green's motion for a court-appointed expert (criminalist), therefore he could not properly present his theory of defense of accidental discharge;
3. The trial court erred in denying Green's motion for a court-appointed psychologist, therefore he could not properly present his theory of the defense related to his state of mind when he was assaulted by the victim;
4. The trial court erred in permitting the State to elicit testimony that Green did not flee when confronted by the victim;
5. The trial court erred in giving a lesser included offense instruction for manslaughter where the elements of manslaughter were not proven by the State;
6. The evidence was insufficient to support a verdict of guilty of manslaughter or in the alternative was against the overwhelming weight of credible evidence;
7. The court should have granted Green's Weathersby instruction because his version of the facts was not substantially contradicted in material particulars by a credible witness for the State;
8. The failure of the trial court to grant Green a directed verdict or a JNOV culminated at the sentencing hearing before the trial judge; and
9. The trial court erred in revoking Green's status as an indigent.

I.

THAT THE PROSECUTION DID NOT PROVE ALL THE ELEMENTS OF A PRIMA FACIE CASE OF MURDER BEYOND A REASONABLE DOUBT AND, THEREFORE GREEN SHOULD HAVE BEEN GRANTED A MOTION FOR A DIRECTED VERDICT.
In order to preserve for appeal the issue of error in the trial judge's denial of motion for directed verdict made at the conclusion of the State's case, the motion must be renewed at the close of the defense case or a peremptory instruction must be requested. Roberts v. State, 582 So.2d 423, 424 n. 1 (Miss. 1991). Green neither renewed his motion for directed verdict at the conclusion of his case nor requested a peremptory instruction. This issue is procedurally barred.
Under this same assignment Green contends that the prosecution failed to prove he acted with malice and deliberate design. The jury rejected the murder charge offered by the State and found Green guilty of manslaughter, which it may do pursuant to Miss. Code Ann. § 99-19-5 (1972). The element of malice aforethought is irrelevant to the charge of manslaughter. Meshell v. State, 506 So.2d 989, 991 (Miss. 1987). This assignment of error is without merit.

II.

THE TRIAL COURT DENIED GREEN'S MOTION FOR A COURT-APPOINTED EXPERT (CRIMINALIST), THEREFORE HE COULD NOT PROPERLY PRESENT HIS THEORY OF DEFENSE OF ACCIDENTAL DISCHARGE.
Green challenges the denial by the trial judge of his motion for a court-appointed expert so that he could properly present his theory of defense of accidental discharge of the pistol.
At trial Green was an indigent. An indigent's right to defense expenses is "conditioned upon a showing that such expenses are needed to prepare and present an adequate defense." Ruffin v. State, 447 So.2d 113, 118 (Miss. 1984). Concrete reasons for requiring an expert must be provided by the accused. Hansen v. State, 592 So.2d 114, 125 (Miss. 1991).
In determining whether a defendant was denied a fair trial because of failure to appoint or allow funds for an expert, some of the factors to consider are whether and to what degree the defendant had access to the State's experts, whether the defendant had the opportunity to cross-examine those experts, and lack of prejudice or incompetence of the State's experts. Fisher v. City of Eupora, 587 So.2d 878, 883 (Miss. 1991). We have also considered to what extent the State's case depends upon the State's expert, *172 Tubbs v. State, 402 So.2d 830, 836 (Miss. 1981), and the risk of inaccuracy in resolving the issue for which the expert is requested. Johnson v. State, 529 So.2d 577, 592 (Miss. 1988).
Green made a proffer of to what a criminalist, if appointed, would have testified. The State did not present any expert; therefore, whether and to what extent Green had access to the State's expert and opportunity to cross-examine him, whether the State's expert was prejudiced or incompetent, and the extent to which the State's case depended on its expert are not applicable. Moreover, Green elicited testimony from Preston Frayser that the Black Hawk pistol could fire without a deliberate effort to pull the trigger. Frayser provided this information both by reading from the instruction manual of the Ruger Black Hawk and by stating that he had personally experienced accidental discharges when using a Ruger Black Hawk. Green was able to present his defense of accidental discharge to the jury. No injustice resulted from the trial court's denial of the appointment of a criminalist and there is no merit to this assignment of error.

III.

THE TRIAL COURT ERRED IN DENYING GREEN'S MOTION FOR A COURT-APPOINTED PSYCHOLOGIST, THEREFORE HE COULD NOT PROPERLY PRESENT HIS THEORY OF THE DEFENSE RELATED TO HIS STATE OF MIND WHEN HE WAS ASSAULTED BY THE VICTIM.
Green's motion for a court-appointed psychologist states, "[t]hat the services of a psychologist are necessary in this cause in order to adequately prepare for the presentation of psychological factors relating directly to the defense of the defendant" and such services are "necessary in order to properly and adequately prepare and present evidence in the trial of this case regarding the state of mind of defendant regarding his physical disability and other factors regarding the stressful conditions confronting the defendant at the time of the alleged murder." The motion further asserts, "a psychologist and competent evaluation by the same will, in this case, be able to establish that at the time of the offense the defendant was under the influence of extreme mental or emotional disturbance or extreme duress which would affect his state of mind and thought patterns at the time of the incident." As in his motion for a court-appointed criminalist, Green also asserts that denial of his motion for a psychologist "will deprive the defendant of effective assistance of counsel, right to equal protection of the law and the right to present evidence in his defense."
The specific purpose for which the psychologist was requested was to show Green's state of mind regarding his physical disability and to show that, at the time of the offense, Green was under extreme mental or emotional disturbance or extreme duress. Green failed to specify how denial of this requested expert would violate his constitutional rights. If Green had intended to use mental or emotional disturbance as a defense, a reasonable inference could be drawn that denial of a court-appointed psychologist would effect a deprivation of his right to present evidence in his defense. The record does not even hint at a defense of this nature, but highlights Green's constant contention that the gun fell out of his pocket, he picked it up to prevent Camp from getting it, and the gun accidentally discharged.
The State offered no expert testimony regarding Green's state of mind or possible mental or emotional disturbance. When Green took the stand himself, he did not testify as to his state of mind regarding his physical disability or that he had been under extreme duress at the time of the offense. Under these facts, a new trial is not warranted because the trial court denied Green the services of a court-appointed psychologist. Griffin v. State, 557 So.2d 542, 550 (Miss. 1990). This assignment of error has no merit.

IV.

THE TRIAL COURT ERRED IN PERMITTING THE STATE TO ELICIT TESTIMONY THAT GREEN DID NOT FLEE WHEN CONFRONTED BY THE VICTIM.
Green testified that he had wanted to avoid Mike Camp on the day of the alleged *173 murder because he was afraid of Camp. On cross-examination, the prosecution attempted to show that Green's actions on June 25, 1990, were inconsistent with this purported state of mind. Green objected and argued that there was "no duty to stay inside or retreat from Mr. Camp." The prosecutor explained that he was not raising the issue of whether Green had a legal right to retreat, but trying to compare Green's cross-examination responses to his testimony on direct examination. Green lodged a contemporaneous objection. The objection was overruled.
M.R.E. 611(b) allows wide-open cross-examination so long as the matter probed is relevant. M.R.E. 611(b), Comment. From the record it does not appear that the State was trying to raise the issue of Green's legal duty to retreat. It appears clearly that the State was simply trying to show inconsistencies between Green's answers on direct and Green's answers on cross-examination. Whether or not Green was or was not attempting to avoid Camp on the day of the offense is a relevant matter for cross-examination.
In his brief, Green argues that the jury should have been instructed that he was under no duty to retreat, but Green offered no such instruction. Furthermore, Green did not object to any jury instructions on this point at the trial, and therefore, the issue is procedurally barred. Cummins v. State, 515 So.2d 869, 872 (Miss. 1987).

V.

THE TRIAL COURT ERRED IN GIVING A LESSER INCLUDED OFFENSE INSTRUCTION FOR MANSLAUGHTER WHERE THE ELEMENTS OF MANSLAUGHTER WERE NOT PROVEN BY THE STATE.
Green objects to the trial court's granting a lesser included offense instruction for manslaughter. A lesser included offense instruction is warranted where the jury could find, from the evidence presented, the defendant not guilty of the crime with which he was charged, yet guilty of the lesser included offense. Toliver v. State, 600 So.2d 186, 192 (Miss. 1992).
Green failed to object to the manslaughter instruction given at the trial; therefore, it is not necessary for us to review this assignment. Gates v. State, 484 So.2d 1002, 1009 (Miss. 1986).
As a sub-part of this assignment, Green also argues that the trial court erred in granting Instructions S-3 and S-4, to which Green objected. The instructions read as follows:
The intentional doing of any wrongful act in such manner and under such circumstances as that the death of a human being may result therefrom is malice.
Malice is implied, and hence murder exists, whenever a death occurs as a result of some wilful act by the accused under circumstances where he knows the act is likely to cause death or serious bodily injury.
S-3.
Malice in murder may also be shown by proof that, in the circumstances known to the Defendant, a reasonably prudent person would have known that according to common experience there was a plain and strong likelihood that death would follow the contemplated act.
S-4.
It is well settled in our law, that after a conviction of manslaughter, one indicted for murder may not complain on appeal of instructions dealing with murder, even if erroneous. Griffin v. State, 492 So.2d 587, 589 (Miss. 1986). Instructions S-3 and S-4 concern malice, an element of murder and not of manslaughter. There is no merit to this assignment of error.

VI.

THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A VERDICT OF GUILTY OF MANSLAUGHTER OR IN THE ALTERNATIVE WAS AGAINST THE OVERWHELMING WEIGHT OF CREDIBLE EVIDENCE.
Green next argues that the evidence was insufficient to support a verdict of a conviction of manslaughter, or in the alternative, was against the overwhelming weight *174 of the credible evidence. When the sufficiency of the evidence is challenged, we must review the trial court's ruling "on the last occasion when the sufficiency of the evidence was challenged." Wetz v. State, 503 So.2d 803, 808 n. 3 (Miss. 1987). The last occasion upon which Green challenged the sufficiency of the evidence was in his motion for new trial. We, therefore, consider all of the evidence presented throughout the course of the trial. We do so, however, in the light most favorable to the State. McFee v. State, 511 So.2d 130, 133-34 (Miss. 1987).
The evidence presented clearly shows the killing of a human being without authority of law, satisfying two of the necessary elements of manslaughter. Use of a dangerous weapon in the killing, a third element of manslaughter, is also established by the evidence. There is no evidence to suggest that Green shot Camp in necessary self-defense. Green did not testify that he shot Camp in order to defend against Camp's assault; instead, Green argued that the gun accidentally discharged. This leaves only lack of malice and heat of passion.
Though there is evidence in the record from which a rational jury could decide that Green killed Camp with deliberate design, there is also evidence in the record supporting the premise that the gun was fired in the heat of passion. This was a proper issue for the jury to resolve and the jury determined Green shot Camp in the heat of passion. Viewing the evidence in the light most consistent with the verdict, it cannot be said that reasonable and fair-minded jurors could only have found Green not guilty. Just as there was a sufficient evidentiary basis for a manslaughter instruction, there is sufficient evidence to support a conviction of manslaughter.

VII.

THE COURT SHOULD HAVE GRANTED GREEN'S WEATHERSBY INSTRUCTION BECAUSE HIS VERSION OF THE FACTS WAS NOT SUBSTANTIALLY CONTRADICTED IN MATERIAL PARTICULARS BY A CREDIBLE WITNESS FOR THE STATE.
Green argues that the trial court should have granted his Weathersby instruction because his version of the facts was not substantially contradicted by a credible witness for the State. The Weathersby rule requires that the reasonable, uncontradicted story of the defendant or his witnesses must be accepted as true. Wetz v. State, 503 So.2d 803, 808 (Miss. 1987), quoting Weathersby v. State, 165 Miss. 207, 209, 147 So. 481, 482 (1933). Where the Weathersby rule applies and the defendant's version affords an absolute legal defense, the defendant is entitled to a directed verdict of acquittal. Blanks v. State, 547 So.2d 29, 33 (Miss. 1989). But where the defendant's story is materially contradicted, the Weathersby rule has no application and the matter of conviction versus acquittal becomes a question for the jury. Blanks, 547 So.2d at 33-34. The Weathersby rule is also inapplicable where the defendant's conduct and statements following the killing are inconsistent with his version of the events as recounted at trial. Blanks, 547 So.2d at 34.
Green's argument that there were no eyewitnesses to the shooting, and that his version is not contradicted by any credible witness, physical evidence, or facts of common knowledge, and that the State's witnesses substantiated his testimony, is based on Green's discounting the eyewitness testimony of Donna Groner, which contradicts Green's version of the shooting. Green discounts Groner's testimony because her trial testimony differed from the initial statement she gave police and because of her "substantial bias" as the former wife of the victim, Mike Camp. Green concludes that Groner is not a credible witness, therefore the Weathersby rule should apply. Green relies on Kirkland v. State, 573 So.2d 681 (Miss. 1990), in support of his argument that Groner's lack of credibility required application of the Weathersby rule. Green misapprehends the holding in Kirkland; it has no application here and does not even mention the Weathersby rule.
The State responds that Green's accidental discharge and self-defense theories are contradicted: by Charlene Camp's testimony that Green displayed the gun to her and said *175 he would kill Mike Camp; by Green's statements made after the shooting; and by testimony that Green stood with the gun over Camp's head after the shooting.
Green's version of the events mentioned nothing about self-defense. Green steadfastly maintained that he was assaulted by Mike Camp, that the gun fell out of his pocket during the scuffle, that he reached for it to prevent Mike Camp from getting to it first, and that the pistol accidentally discharged. Green's version was substantially contradicted by Donna Groner's testimony. Groner testified that while Camp and Green were fighting, Green jerked open his shirt, reached in and pulled out the gun, then pulled the trigger and shot Mike Camp. In the offense report, Officer King wrote that Donna Groner heard the shot that killed Mike Camp. This report is not a "statement" given by Groner, nor was it signed by her. This report apparently consists of notes made by King in the course of his investigation and questioning of witnesses on the scene. A subsequent statement signed by Groner to police agrees with her trial testimony.
It is for the court and not the jury to determine whether the defendant receives the benefit of the Weathersby rule. Null v. State, 311 So.2d 654, 658 (Miss. 1975). The Weathersby rule is nothing more than a statement of our general standards by which courts determine whether a directed verdict of acquittal is warranted. Jackson v. State, 551 So.2d 132, 136 (Miss. 1989). When considering a motion for directed verdict, all evidence introduced by the State must be accepted as true, together with all reasonable inferences therefrom. McGee v. State, 569 So.2d 1191, 1194 (Miss. 1990). If there is sufficient evidence to support a guilty verdict, the motion for directed verdict must be overruled.
Despite the assumption of truth given the State's evidence on a motion for directed verdict, witness credibility as well as the weight and worth of conflicting testimony is left to the jury. Burrell v. State, 613 So.2d 1186, 1192 (Miss. 1993).
Groner's testimony clearly conflicted with that given by Green, thereby preventing application of the Weathersby rule and creating a jury question regarding witness credibility as well as the weight and worth of the conflicting testimony presented. Consequently, the issue of witness credibility, as well as whether to convict or acquit, was properly put to the jury for determination. Blanks, 547 So.2d at 33-34.
The Weathersby rule also would not apply in this case because of the statements made by Green following the shooting, "He shouldn't have hit me."; "Donna, I'm sorry, but he shouldn't have tried to hit at me. You saw him, he tried to hit at me first."; "You saw, he hit me first. You know I had to do it."; "You ought not to have done it. You ought not to have jumped me. You just ought not to have done it." As in Blanks, 547 So.2d at 34, Green's statements after the shooting are not consistent with Green's testimony at trial that the gun accidentally discharged, therefore the Weathersby rule is inapplicable.
We further point out that in Griffin, this Court held that "the Weathersby Rule is not the proper subject of an instruction to the jury." Windham v. State, 602 So.2d 798, 800 n. 3 (Miss. 1992), quoting Griffin v. State, 495 So.2d 1352, 1355 (Miss. 1986).

VIII.

THE FAILURE OF THE TRIAL COURT TO GRANT GREEN A DIRECTED VERDICT OR A JNOV CULMINATED AT THE SENTENCING HEARING BEFORE THE TRIAL JUDGE.
Green argues that the trial judge impermissibly interjected his personal bias (pro gun control) into the sentencing procedure, resulting in an excessive sentence, and that the trial judge should have recused himself because of his personal views on gun control and use. Green objects to his twenty year sentence, restitution to the victim's family for medical and funeral expenses, reimbursement to Yalobusha County for attorney fees and expenses, and the lien against his workers' compensation benefits to secure payment of restitution and reimbursement.

*176 A. Sentence and Penalties

1. Sentence
So long as the sentence imposed is within the statutory limits, sentencing is generally a matter of trial court discretion. Wallace v. State, 607 So.2d 1184, 1188 (Miss. 1992). Green's sentence is within the statutory limits imposed by Miss. Code Ann. § 97-3-25 (1972).

2. Restitution
The trial judge ordered Green to pay restitution to Mike Camp's family for his medical and funeral expenses in the amount of $12,828.50. Green was convicted of criminal activities which resulted in pecuniary damages, therefore, the trial court had authority to order restitution to the victim's family in addition to imposing a prison sentence. Miss. Code Ann. §§ 99-37-3(1) and 99-37-1(a), (b), and (c) (Supp. 1992); Butler v. State, 544 So.2d 816, 821 (Miss. 1989).
Green had a right to object to the order of restitution during sentencing and to be heard on the issue. Miss. Code Ann. § 97-37-3(3) (Supp. 1992). However, no objection was lodged. We have previously held that failure to object to an order of restitution during sentencing bars appeal on that point. Shook v. State, 552 So.2d 841, 851 (Miss. 1989). It follows that this Court would not need to further examine this issue but for the question regarding Green's status as an indigent.
In determining whether to order complete, partial, or nominal restitution, the court is required to consider the defendant's financial resources and the burden restitution will impose upon him, his ability to pay on installment or other basis, and the rehabilitative effect of payment of restitution on the defendant. Miss. Code Ann. § 99-37-3(2)(a), (b), and (c) (Supp. 1992). There is no evidence that these factors were considered by the trial judge, particularly in light of the affidavit accompanying Green's motion for leave to appeal in forma pauperis, which reveals his only income is $160.00 per week in workers' compensation benefits for temporary total disability and the only valuable property he owns, a motorcycle, is encumbered by a lien in an amount $2,000.00 greater than the market value of the vehicle.
When a defendant ordered to make restitution is also sentenced to a term of imprisonment, the order of restitution is not "enforceable during the period of imprisonment unless the court expressly finds that the defendant has assets to pay all or part of the amounts ordered at the time of sentencing." Miss. Code Ann. § 99-37-5(1) (Supp. 1992) (Emphasis added). The trial judge did not say when Green was to make restitution to Camp's family, nor did he specify a method of payment. Also, there was no express finding that Green had assets to pay any part of the amount ordered, although by directing that a lien be placed against Green's workers' compensation benefits the judge implicitly found Green had assets to pay part of the restitution amount. With no express finding that there were assets available to pay restitution, this order is not enforceable during Green's period of imprisonment.
In light of the trial judge's failure to grant consideration of the factors set forth in § 99-37-3(2) and the absence of any specified time or method of payment (installment, etc.), the order of restitution in the amount of $12,828.50 is error, and the question is remanded to the circuit court to carry out proper review under the statute.

3. Lien against Workers' Compensation Benefits
The trial judge ordered the district attorney to make a claim in the amount of $16,859.54 against Green's pending workers' compensation action to secure payment of restitution and reimbursement; the district attorney has complied. First, Miss. Code Ann. § 71-3-43 (1972), provides that workers' compensation is exempt from all creditors' claims and from levy, execution, attachment or other remedy for recovery of a debt. If Green's indigent status was properly revoked and the amount of his attorney fees and expenses is a debt owed the county, his workers' compensation benefits would still be exempt from any claim for recovery of this debt. The trial judge erred on this point.
It may well be that the legislature may wish to revisit this issue but as the law *177 stands today, the trial judge cannot levy against workers' compensation benefits.
Moreover, regarding the order of restitution, since Green was also sentenced to imprisonment and the trial judge did not expressly find he had assets to pay Camp's family, the order of restitution is not enforceable during the period of imprisonment. Miss. Code Ann. § 99-37-5(1) (Supp. 1992). Imposition of levy of execution for the collection of restitution is not authorized until the defendant is in default in his payment. Miss. Code Ann. § 99-37-13 (Supp. 1992). Green's order of restitution is not yet enforceable, therefore, he can not be in default. The trial judge erred by ordering a claim against Green's workers' compensation benefits to secure payment of restitution.

B. Recusal

The trial judge was not barred by the constitutional or statutory provisions from presiding. He was not connected to any of the parties by affinity or consanguinity, nor was he of counsel in this matter. Buchanan v. Buchanan, 587 So.2d 892, 895 (Miss. 1991).
We therefore review the challenge of his refusal to recuse himself under the Code of Judicial Conduct, Canon 3(C)(1), which requires disqualification of a judge when "his impartiality might reasonably be questioned, including but not limited to instances where: (a) he has a personal bias or prejudice concerning a party... ."
"[T]he Canon enjoys the status of law such that we enforce it rigorously, notwithstanding the lack of a litigant's specific demand." Collins v. Dixie Transport, Inc., 543 So.2d 160, 166 (Miss. 1989).
The standard by which we determine if a judge should have disqualified himself is an objective standard under Canon 3. "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." Jenkins v. State, 570 So.2d 1191, 1192 (Miss. 1990).
A presumption exists "that a judge, sworn to administer impartial justice, is qualified and unbiased. To overcome the presumption, the evidence must produce a `reasonable doubt' (about the validity of the presumption)[.]" Buchanan, 587 So.2d at 896, quoting Turner v. State, 573 So.2d 657, 678 (Miss. 1990). When a judge is not disqualified under the constitutional or statutory provisions, "the propriety of his or her sitting is a question to be decided by the judge and is subject to review only in case of manifest abuse of discretion." Ruffin v. State, 481 So.2d 312, 317 (Miss. 1985).
The judge's remarks at sentencing to which Green objects are contained in the following excerpt from the transcript:
Mr. Camp  I mean, excuse me, I'm sorry  Mr. Green, I'm one of the few people in the South perhaps that advocates strict handgun control. People like you don't deserve the right to own a handgun and if you had received proper legal advice, you weren't permitted to have or own a handgun or even have one in your possession since the 19th day of October, 1982, when you became a convicted felon. You armed yourself with a deadly weapon, you concealed it, you got into the building with it, you expressed to the people what you would do and you did it.
I gave the jury an option of considering murder and the option of considering manslaughter. I thought your attorneys represented you well. They had sufficient evidence in the record where I was required to give the jury the option of manslaughter and of also murder. And the jury elected the option of manslaughter.
It was a senseless killing, a useless killing. Just  I see dozens of them a year that are committed by people who will poke a handgun in their pocket and walk out on the street knowing they're going to kill somebody or they wouldn't put it in there. You didn't have that gun on for protection and you didn't have that gun on headed for a pawn shop. The man that you said was going to pawn that gun testified from the witness chair that you had not made any appointment with him that day or any other time to pawn that weapon. It was a senseless, useless, reckless killing.
*178 The comment about advocating handgun control is clearly a statement reflecting the judge's personal bias, but this is not "personal bias or prejudice concerning a party" as contemplated by Canon 3(C). The remark concerning the prohibition of handgun possession by convicted felons is no more than a statement of the law. The comments specifically regarding Green and his actions do not express any pre-judgment of Green's case. Rather, these comments reflect the judge's conclusions drawn from the evidence presented in the case. They do not appear to create reasonable doubt about the validity of the presumption of impartiality.
Green has cited no instances where the judge improperly admitted or excluded evidence as a result of his alleged bias, nor has he provided any other evidence of bias. A reasonable person, knowing all of the circumstances, would not doubt the judge's impartiality in this case. As no motion for recusal was before the judge, it seems his failure to recuse himself sua sponte was not a manifest abuse of discretion.

IX.

THE TRIAL COURT ERRED IN REVOKING GREEN'S STATUS AS AN INDIGENT.
Green filed an affidavit of financial eligibility prior to his trial below. The trial judge adjudged Green to be financially eligible and appointed him an attorney. Following his trial and conviction, Green filed a motion for leave to appeal in forma pauperis, accompanied by an affidavit. The State responded that Green had posted an appeal bond in the sum of $30,000.00, therefore, he could not be an indigent person. The trial judge subsequently entered an order finding Green not an indigent. Apparently, the trial judge relied on the stipulation at trial regarding Green's workers' compensation benefits in determining that Green was not indigent and could pay restitution to Camp's family and reimbursement to the county for attorney fees and expenses. The amount Green was ordered to reimburse the county is $4,034.04.
The record does not reveal how Green was able to post the $30,000.00 appeal bond. It does, however, show that Green's only income is $160.00 a week in workers' compensation benefits and the only valuable property he owns, a motorcycle, is encumbered by a lien in an amount $2,000.00 greater than its market value. There is insufficient evidence in the record to uphold the trial judge's revocation of the indigency status of Green and to deny his appeal in forma pauperis. Therefore, this issue is remanded to the Circuit Court of Yalobusha County for a hearing to determine whether or not Green is indigent. Included in this remand is the trial judge's order of reimbursement of attorney fees and expenses to the county as that question will rise or fall depending upon the outcome of the indigency hearing on remand.
CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. THE TRIAL JUDGE'S ORDER OF CLAIM AGAINST APPELLANT'S WORKERS' COMPENSATION BENEFITS IS REVERSED AND THIS CAUSE IS REMANDED TO THE CIRCUIT COURT OF THE SECOND JUDICIAL DISTRICT OF YALOBUSHA COUNTY FOR A HEARING TO DETERMINE APPELLANT'S INDIGENT STATUS AND FOR A PROPER DETERMINATION OF RESTITUTION.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.