# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CT-00263-SCT

*MELISSA LAUREL GARRISON*

*v.*

*STATE OF MISSISSIPPI*

## ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 12/16/94 |
| TRIAL JUDGE: | HON. JERRY O. TERRY |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DONALD J. RAFFERTY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | CONO CARANNA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 06/18/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/15/98 |

**EN BANC.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. Melissa Garrison was found guilty of murdering her mother, Betty Garrison, by a jury of the Harrison County Circuit Court on December 2, 1994. Her conviction was affirmed by a plurality of the Court of Appeals on May 20, 1997. The Court of Appeals found that the lower court properly allowed into evidence the guilty plea transcript of her older sister and co-conspirator, Shannon Garrison. Garrison now appeals that decision to this Court. We find that the Court of Appeals erred in affirming the circuit court's rulings that Shannon Garrison's guilty plea transcript was admissible, that certain testimony of co-conspirator Allen Goul was properly excluded, and that none of the testimony of clinical psychologist, Dr. Joseph Tramontana, who treated Melissa Garrison both before and after the murder, was admissible. While Garrison did not meet her burden of showing that Judge Terry's familiarity with the case warranted his recusal, we find that a specter of impartiality was raised by his comments during earlier proceedings that he believed that both Melissa and Shannon Garrison, as well as Allen Goul, were guilty and that he believed Shannon's testimony at her plea. We reverse and remand the case to the Harrison County Circuit Court for a new trial consistent with this opinion.

¶2. Betty Garrison, the divorced mother of two teenage daughters, was murdered in her bedroom in the early morning hours of July 7, 1992. Her two daughters, Shannon and Melissa, along with Allen Goul, a neighbor and Melissa's boyfriend, were accused of the murder. Melissa admitted that she witnessed her mother's murder, but denied any participation. While she admitted making derogatory comments about her mother to Goul, she denied that she ever seriously considering killing her.

¶3. There was some evidence that both girls had asked Goul to kill their mother, and that, ultimately, it was Goul who planned the murder. On the day of the murder, Goul sent a note addressed to Shannon and Melissa, outlining "instructions step by step," including the disposal of the body. There was a second note addressed to Melissa telling her "Tonight! Open the window at 2:30 or keep a look out for me walking on the street. I may be a little earlier. Be ready, O.K." The notes were left at the Garrison home in a cassette tape case which Betty gave to Melissa around 8:00 p.m., after they returned from a family therapy session. Both notes later were found in the pockets of the shorts Melissa was wearing when she was taken into custody.

¶4. Goul testified that when he arrived at the Garrison home early that morning, he asked Melissa if she was sure she "wanted this done." Melissa allegedly responded by saying that Shannon was waiting in their mother's bedroom. Melissa denied this, stating that she followed Goul to her mother's bedroom without knowing his intent. Shannon was already in her mother's room when Goul entered. On his instruction, Shannon placed a pillow on her mother's face. A struggle ensued, during which Goul stabbed Betty Garrison a number of times with a knife he brought with him and began to strangle her. Goul testified that during the struggle, Melissa yelled, "Is she dead yet? Kill her! Shut her up." According to Goul, while Melissa and Betty were screaming, Shannon whispered to her mother, "Mother, you're to die."

¶5. After they were satisfied that Betty was dead, the trio left the home on foot, disposed of the knife and various articles of clothing, and went to a friend's house. They got a ride back to the Garrison home and took the family car to find Shannon's boyfriend, Michael Brewer. Brewer later testified that it was he who suggested that they should make it appear that Betty had been killed during a robbery.

¶6. After dropping the boys off in a nearby alley, the girls returned home and called 911, reporting that the house had been robbed and their mother had been injured. When the police arrived, they immediately became suspicious of Goul, whom they had spotted outside with a number of scratches on his neck and chest.

¶7. Melissa and Shannon Garrison, along with Allen Goul, were indicted for murder by a grand jury of the Harrison County Circuit Court. Shannon and Goul ultimately entered guilty pleas. Prior to accepting her guilty plea, the court asked Shannon to give her version of the events leading up to and including July 7, 1992. Shannon's testimony went to great lengths to shift as much of the blame as possible to primarily Goul as well as to Melissa. At Melissa's first trial, Shannon, who already had entered a guilty plea, apparently was not called as a witness. That trial ended in a hung jury. By the time of Melissa's second trial, Shannon was trying to withdraw her guilty plea. She refused to testify, invoking her fifth amendment rights. No attempts were made at this trial to introduce Shannon's plea transcript. This trial also ended in a mistrial. At Melissa's third trial, Shannon took the stand briefly while the District Attorney attempted to ascertain whether she was "taking the fifth." No questions

were asked and the plea transcript was not offered into evidence. At the fourth trial, Shannon again was called and invoked her fifth amendment rights. Despite threats of contempt, she refused to testify. The prosecutor then was allowed to read the plea transcript to the jury. Contemporaneous hearsay objections by the defense were overruled. This time, Melissa was found guilty and sentenced to life in prison.

## II.

¶8. The Court of Appeals ruled that the circuit court properly admitted the transcript of Shannon Garrison's guilty plea as an exception to the hearsay rule pursuant to Miss.R.Evid. 804(b). We disagree. Admission of the transcript violated Melissa Garrison's sixth amendment confrontation rights and is contrary to our holdings in *Williams v. State*, 667 So. 2d 15 (Miss. 1996) and *Stoop v. State*, 531 So. 2d 1215 (Miss. 1988).

¶9. Rule 804(b)(3) of the Mississippi Rules of Evidence provides as follows:

> (b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> \* \* \* \* \*
>
> (3) Statement Against Interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Miss. R. Evid. 804(b)(3). Analyzing the identical federal rule, the United States Supreme Court explained in *Williamson v. United States*, 512 U.S. 594 (1994):

> Rule 804(b)(3) is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true. This notion simply does not extend to the broader definition of "statement." The fact that a person is making a broadly self- inculpatory confession does not make more credible the confession's non-self-inculpatory parts. One of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature.
>
> \* \* \* \* \*
>
> And when part of the confession is actually self-exculpatory, the generalization on which Rule 804(b)(3) is founded becomes even less applicable. Self-exculpatory statements are exactly the ones which people are most likely to make even when they are false; and mere proximity to other, self-inculpatory, statements does not increase the plausibility of the self-exculpatory

statements.

*Williamson*, 512 U.S. at 599-600.

¶10. Our analysis of whether the circuit court erred in admitting Shannon Garrison's guilty plea pursuant to Miss. R. Evid. 804(b)(3) necessarily is intertwined with a determination of whether the admission of such evidence violated Melissa Garrison's sixth amendment confrontation rights. We must look first at whether the declarant was "unavailable as a witness" as defined by Rule 804(a). Next, we must determine whether her guilty plea statement qualifies as a statement against penal interest so as to render it a hearsay exception pursuant to Rule 804(b). We then are left with the third element of the equation, wherein we are called upon to determine whether Shannon's statement had the "particularized guarantees of trustworthiness" necessary to pass constitutional muster.

¶11. Rule 804(a)(2) defines "unavailability of a witness" as including those situations where the declarant "[p]ersists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so." Prior to trial, the State attempted to have Shannon declared "unavailable" because of her prior reliance on the fifth amendment in an effort to admit the statement pursuant to Rule 804(b)(1). The trial court ruled that since neither Melissa nor her attorney had participated in the plea hearing, she had had no opportunity to confront the witness and the statement was inadmissible under Rule 804(b)(1). In his later ruling, allowing the transcript to be admitted into evidence and read to the jury, the trial court ultimately relied on Rules 804(b)(3)and (5). Further, at the fourth trial, Shannon continued to refuse to testify, despite threats of contempt, based on the fifth amendment. She clearly meets the Rule 804(a)(2) definition of "unavailable as a witness." *See Lacy v. State,* 700 So. 2d 602 (Miss. 1997)(prior statement by witness who invoked fifth amendment at trial admissible under Rule 804(b)(3)).

¶12. In *Williams v. State,* 667 So. 2d 15 (Miss. 1996), this Court considered the effect of the Confrontation Clause on the Rule 804(b)(3) hearsay exception in the context of a statement given by a witness who subsequently was made unavailable by her marriage to the defendant just prior to trial. *See* Miss. Code Ann. § 13-1-5 (1972); Miss. R. Evid. 601.

> The United States Supreme Court has held that reliability can be inferred "where the evidence falls within a firmly rooted hearsay exception . . .," otherwise, there must be "a showing of particularized guarantees of trustworthiness." *Ohio v. Roberts*, 448 U.S. at 56, 100 S. Ct. at 2534. A majority on the United States Supreme Court has yet to conclude that Rule 804(b)3 falls within a firmly rooted hearsay exception. *See Lee v. Illinois* 476 U.S. 530, 106 S. Ct. 2056, 90 L. Ed. 2d 514 (1986). Therefore, the statement in this case must contain particularized guarantees of trustworthiness.

> The Court has stated that " 'particularized guarantees of trustworthiness' must be shown from the totality of the circumstances . . .," including only those relevant circumstances that surround the making of the statement and that "render the declarant worthy of belief." *Idaho v. Wright*, 497 U.S. 805, 819, 110 S. Ct. 3139, 111 L. Ed.2d 638 (1990). The Court also stated that "if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial." *Id.* at 820, 110 S. Ct. at 3149. Considering the totality of the circumstances, including the declarant's motive to fabricate as well as her traumatic mental state while in

custody, this statement fails under Confrontation Clause analysis and should not be admitted.

*Williams,* 667 So. 2d at 21. We therefore must consider whether Shannon Garrison's truthfulness was so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility so as not to be barred under the hearsay rule. *Id.* The Court of Appeals found that

> An examination of the totality of the circumstances in this case convinces this Court that there were particularized guarantees of trustworthiness and reliability in regard to Shannon's statement such as not to offend the Confrontation Clause. The statement was made under oath, in the presence of her counsel, and was made under such circumstances where there was limited motive for fabrication. Unlike the usual situation, Shannon did not attempt to implicate someone else in an attempt to avoid prosecution, to shift the blame, or to receive favorable treatment.

This evaluation of Shannon's statement is unsupported by the record. While the statements made during the course of a guilty plea proceeding are made under oath, and are against penal interest, a simple reading of the plea transcript shows that while Shannon did not actually admit to the physical act of murder, she *did* attempt to implicate Goul and, to some degree, Melissa. Further, she attempted to shift as much blame as possible away from herself to get a more lenient sentence. While the Court of Appeals find that Shannon was neither offered nor received any favorable treatment, the transcripts indicate that she held out a hope for "alternative sentencing" as a minor. In response to the question whether she was offered any reward for pleading guilty she responded that she was told that such sentencing "might be considered." Her lawyer later amplified this statement relating that it was his advice that alternative sentencing was more likely with a plea of guilty. The trial court responded that there were not "many occasions when I have penalized someone for going to trial" and went on to explain that he would consider all of the sentencing alternatives regardless of whether there was a plea or trial. It may be readily seen then that, in Shannon's mind a guilty plea might engender favorable treatment even to the extent of reducing a sentence of life imprisonment to one of one year in the county jail. In fact, she immediately sought to withdraw her plea when she was given the life sentence.

¶13. Shannon's testimony differed from that of both Goul and Melissa in several significant details. By the time this evidence was introduced in Melissa's fourth trial, Shannon had already disavowed the statement in her attempt to withdraw her guilty plea. We note, too, that the jury was instructed that both Shannon and Goul were accomplices and co-defendants, and as such, their testimony "was to be considered and weighed with great care and caution and suspicion."

¶14. In *Stoop v. State,* 531 So. 2d 1215 (Miss. 1988), we articulated the distinctions between the "circumstantial guarantees of trustworthiness" required by Rule 804(b)(5) and the "particularized guarantees of trustworthiness" necessary to satisfy the sixth amendment. At Jimmy Stoop's third trial, the State offered the transcript of the testimony of the chief witness from one of the earlier trials, who was not available for the third trial. Her testimony in the second trial was "in serious conflict" with what she first had testified. Relying on *United States v. Barlow,* 693 F.2d 954 (6th Cir. 1982), this Court found that the transcript did not have the necessary "indicia of reliability" required by the Confrontation Clause.

> In determining to what extent the Confrontation Clause permits the introduction of evidence

which fits within one of the recognized exceptions to the rule against hearsay, courts have sought to balance the right of the defendant to have live testimony presented against him and the interest of the government in ensuring effective law enforcement. For admission of such evidence, the Confrontation Clause requires that the hearsay declarant be unavailable and that the evidence possess "adequate indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception; in other cases, the evidence must be excluded, unless there is a showing of particularized guarantees of trustworthiness. *Moreover, the "circumstantial guarantees of trustworthiness" required by Rule 804(b)(5) are not equivalent to the "particularized guarantees of trustworthiness" required under the Confrontation Clause; thus, evidence of reliability may not be inferred under all exceptions to the rule against hearsay (including Rule 804(b)(5)).*

*Stoop,* at 1221(emphasis added). Given the circumstances under which Shannon's plea was obtained and her subsequent disavowal of the statement in an effort to withdraw her guilty plea, we cannot say that the transcript had the "particularized guarantees of trustworthiness" required by the Confrontation Clause. Admission of the transcript of Shannon's testimony, therefore, improperly abridged Melissa's sixth amendment rights.

¶15. We disagree with the State's assertion that if admission of Shannon Garrison's guilty plea transcript was error, it was "harmless error." As was explained in *Wilcher v. State,* 635 So. 2d 789 (Miss. 1993) (Smith, J., dissenting):

> The basic test for harmless error in the federal constitutional realm goes back to *Chapman v. California,* 386 U.S. 18, . . . (1967). The *Chapman* test is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (quoted in *Yates v. Evatt*, 500 U.S. 391, 392, . . . (1991)). The *Yates* Court further clarified that the inquiry is not whether the jury considered the improper evidence or law at all, but rather, whether that error was "unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Yates*, 500 U.S. at 403. . . .

*Id.* at 798. Admission of the transcript, which explicitly detailed Shannon's version of the girls' participation in their mother's murder, could not be considered "unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." Admission of the transcript, therefore, was not "harmless error."

## III.

¶16. Garrison also asserts that the circuit court erred in not allowing the defense to cross-examine Allen Goul regarding his telephone conversation with Shannon Garrison on the afternoon before the murder. The circuit court sustained the State's hearsay objection. In its opinion, the Court of Appeals stated that

> In urging this ruling to be error, Melissa makes no clear argument for the admissibility of the answer to the question posed under any hearsay exception. Without a clear basis for the admission of the testimony, the court was justified in its ruling. Like other proposed testimony, the testimony related to Shannon's conduct and not Melissa's.

As Garrison asserts in her brief, the trial court allowed numerous other statements recounting conversations between Shannon, Goul, and Michael Brewer, Shannon's boyfriend, into evidence on direct examination by the State. In particular, testimony about the post-murder conversation between Shannon, Melissa, Brewer and Goul, where Shannon told Brewer that they had killed their mother and the group concocted the robbery story for the police, was allowed into evidence. The circuit court allowed these statements pursuant to Miss. R. Evid. 801(d)(2)(E), which provides that "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. Nevertheless, when Garrison's attorney sought to establish which of the sisters had enlisted Goul's involvement via cross-examination about the telephone conversation, the State's hearsay objection was sustained. Reviewing the record and the briefs, we find that the trial court's ruling on this line of questioning, while not reversible error, was inconsistent with the rulings made on direct examination of other witnesses, and that the line of questioning should have been allowed pursuant to Rule 801(d)(2)(E).

IV.

¶17. At trial, Melissa attempted to call as a witness, Dr. Joseph Tramontana, a clinical psychologist, to provide opinion testimony regarding her intent and whether her sister's dominance over her was sufficient to overcome her own free will. Dr. Tramontana was no stranger to this family. He had seen Melissa at least once several years before the murder, and a number of times afterward. He also had treated Betty Garrison on a regular basis for a number of years. Based on the proffer, he was to have testified that Melissa was intimidated by her older sister, but that she did not take Shannon's talk of killing their mother seriously.

¶18. The trial court excluded the proffered testimony, as it had at a previous trial, because it dealt, in part, with Melissa's mental state *after* the crime and therefore was not a subject for expert opinion. Furthermore, the insanity defense was not raised and Dr. Tramontana had not treated either Shannon or Melissa near the time of the murder. The Court of Appeals affirmed the circuit court's finding that to allow expert testimony "on the subjective intentions of an accused based on conclusions reached from his observation invades the province of the fact finder." Both courts relied on *Taylor v. State,* 452 So. 2d 441 (Miss. 1984) and *Newell v. State*, 308 So. 2d 71 (Miss. 1975). In *Newell,* this Court found that:

> The intention of a party is a fact determination to be made by the jury from the evidence. In arriving at this determination it has the duty to consider the testimony concerning the assault, the surrounding circumstances, including the expressions made by the participants. To permit comment on the subjective intentions of an accused by a witness based on conclusions reached from his observation invades the province of the fact finders. The issue of intent must be decided by the jury from the evidence in the case and not the conclusions of others.

*Newell,* 308 So. 2d at 73 (citations omitted). In *Taylor*, further, we rejected the argument that expert testimony on the defendant's state of mind and ability to react to external events would aid the jury in its function as finder of facts, stating, "[w]here insanity is not the defense, the determination of the ultimate fact of murder or manslaughter is left to the jury and is not subject to expert opinion testimony." *Taylor,* 452 So. 2d at 449. *See also* **Hart v. State**, 637 So. 2d 1329 (Miss. 1994)(where defendant sought to justify killing on ground of self-defense, trial court properly excluded psychiatrist

from expressing legal conclusions about his state of mind at the time of the crime).

¶19. In the case *sub judice,* however, the State built its case, to some extent, on testimony about Melissa's actions after her mother's murder, focusing on statements she made which later were proven to be untrue. The State went so far as to assert in closing arguments that these lies were inferential of her guilt. Rule 702 of the Mississippi Rules of Evidence allows for the admission of expert testimony if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." While much of the proffered testimony addressed Melissa's mental state prior to the murder, it also covered Dr. Tramontana's impressions of her mental state after the crime, including post-traumatic shock, depression and anxiety. We find that his testimony about her mental state after the murder was admissible as rebuttal to the State's assertions since it would assist the jury in understanding the evidence and determining facts in issue.

V.

¶20. Melissa further contends that she was prejudiced by Judge Terry's comments he made during plea proceedings which indicated that he believed that she, Shannon and Goul all were guilty and that she was truthful. She argues, therefore, that the circuit court should have granted her Motion for Recusal. While we are concerned that Judge Terry's comments did, indeed, raise the specter of impartiality, Melissa did not meet her burden of overcoming the presumption that the judge was "qualified and unbiased." *Green v. State,* 631 So. 2d 167, 177 (Miss. 1994).

¶21. It is not unusual for a judge to sit on successive trials following mistrials or to hear on remand a case where he previously has heard and ruled on the evidence. However, we are concerned about the propriety of a judge's continuing participation in a case where in the beginning, he expressed clearly his belief that the defendant was guilty. At the end of Shannon Garrison's plea hearing, the transcript of which is the primary issue in this appeal, Judge Terry apparently made a "finding" at the plea stage that there was a plan or conspiracy to kill Barbara Garrison, that Goul and Shannon were guilty, and that Melissa had participated in the plan with them. A similar remark was made during Allen Goul's guilty plea proceedings, where Judge Terry stated:

> . . . I'm satisfied that you are in fact guilty of the murder of Elizabeth Phelps Garrison on July 7, 1992. That you went to the home with the deliberate plan to murder Mrs. Garrison with the use of a knife, that this plan was carried out with the participation of Melissa and Elizabeth [Shannon] at that time, and that you did in fact effect the death of Elizabeth Phelps Garrison before you left.

Melissa asserts that while the trial court is required to find that a guilty plea is voluntary and that a factual basis for the plea must exist prior to accepting it pursuant to Uniform Circuit and County Court Rules 8.04(A)(3), he is not charged with making a finding as to the guilt of others similarly charged in the case or otherwise alluding to them. We agree.

¶22. This Court reviews the challenge of a judge's refusal to recuse himself under the Code of Judicial Conduct, Canon 3(C)(1), which requires disqualification of a judge when "his impartiality might reasonably be questioned, including but not limited to instances where: (a) he has a personal bias or prejudice concerning a party. . . ." *Green,* 631 So. 2d at 177. "'[T]he Canon enjoys the status of law such that we enforce it rigorously, notwithstanding the lack of a litigant's specific demand.'" *Id.*

(quoting *Collins v. Dixie Transport, Inc.*, 543 So. 2d 160, 166 (Miss. 1989)).

¶23. Canon 3 sets forth an objective standard by which we determine if a judge should have disqualified himself. "If a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality, he is required to recuse himself." *Aetna Casualty and Surety Co. v. Berry*, 669 So. 2d 56, 74 (Miss. 1996); *Jenkins v. State,* 570 So. 2d 1191, 1192 (Miss. 1990); *Jenkins v. Forrest County General Hospital*, 542 So. 2d 1180, 1181(Miss. 1988). "A presumption exists 'that a judge, sworn to administer impartial justice, is qualified and unbiased. To overcome the presumption, the evidence must produce a 'reasonable doubt' (about the validity of the presumption).'" *Green,* 631 So. 2d at 177 (quoting *Buchanan v. Buchanan,* 587 So. 2d 892, 895 (Miss.1991)). "When a judge is not disqualified under the constitutional or statutory provisions, 'the propriety of his or her sitting is a question to be decided by the judge and is subject to review only in case of manifest abuse of discretion.'" *Green,* 631 So. 2d at 177 (quoting *Ruffin v. State,* 481 So. 2d 312, 317 (Miss. 1985)).

¶24. It is apparent that Melissa and her counsel had serious doubts about the impartiality of Judge Terry. However, we are bound by the objective test of whether a reasonable person, knowing all the circumstances, would harbor doubts about the judge's impartiality. Melissa attempts to support her argument by noting the unfavorable evidentiary rulings she received in her final trial. These arguments, nevertheless, were not presented to the trial court at the original hearing on the motion, and are not now properly before this Court. She does not assert that Judge Terry made any untoward comments during any of her prior trials nor does the record indicate that any remarks, other than those contained in Shannon's plea hearing transcript, were made before the jury in her final trial. Since we, too, have serious doubts about the judge's impartiality in light of the comments made during the plea proceedings, perhaps the trial judge may wish to revisit this matter on remand.

## CONCLUSION

¶25. In conclusion, we find that the trial court and Court of Appeals erred in ruling that the transcript of Shannon Garrison's guilty plea hearing was admissible, that certain testimony of Allen Goul was properly excluded, and that none of the expert testimony of Dr. Joseph Tramontana, who treated Melissa Garrison both before and after the murder, was admissible for rebuttal of the State's testimony. This case is reversed and remanded and the trial court is instructed to proceed with a trial consistent with this opinion.

¶26. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, MILLS AND WALLER, JJ., CONCUR. ROBERTS, J., CONCURS IN RESULT ONLY. SMITH, J., NOT PARTICIPATING.**