573 So.2d 681 (1990)
Robert KIRKLAND
v.
STATE of Mississippi.
No. 07-KA-59220.
Supreme Court of Mississippi.
December 12, 1990.
Clayton T. Lewis, Philadelphia, for appellant.
Mike C. Moore, Atty. Gen., John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
*682 Before HAWKINS, P.J., and ANDERSON and BLASS, JJ.
BLASS, Justice, for the Court:
In November, 1987, Robert Kirkland, the defendant, was indicted for murder. The jury convicted him of manslaughter and the court sentenced him to serve a term of eight years in prison. The defendant appealed his conviction.
The defendant and the victim, Larry McKeithen, had known each other for approximately ten years. The problems between the two began in April of 1987.
At that time, McKeithen rammed the defendant's car in an attempt to push him through a red light. Later the same evening, McKeithen beat up the defendant. During the fight, the defendant got his gun from the car but put it away without using it. Lynette Clearman was the apparent cause of these problems. McKeithen had dated her at some previous time and now the defendant was seeing her.
Later, the defendant heard rumors that McKeithen was planning to beat him up again. He confronted McKeithen about what he had heard and McKeithen basically confirmed the rumors. At some later time, McKeithen called the defendant on the phone and threatened to "blow his brains out".
On July 12, 1987, the defendant saw McKeithen at a bar in Lauderdale County, Mississippi. There is conflicting testimony regarding the words exchanged between the two. McKeithen's wife testified that her husband asked the defendant if he "had something for him", as he had heard. According to her, the defendant nodded yes and told McKeithen to "come on down the road" because he had something for him. Then Larry Storey, the defendant's companion that day, repeated this invitation twice.
The defendant does not remember making such an invitation, but admitted that his companion, Mr. Storey, did make such a statement. The defendant and Mr. Storey left the bar. About two miles down the road the defendant noticed McKeithen's motorcycle behind him. As soon as the road straightened out McKeithen passed the defendant's car.
McKeithen stopped at a store and told his wife to get off the motorcycle. He asked a friend, Robert Godwin, to get on the back of the motorcycle. McKeithen got a pistol out of Godwin's truck and handed it to Godwin. As the two drove down the road, Godwin put the pistol in the saddlebag of the motorcycle. They caught up with the defendant's car a second time at a stop sign and, according to Godwin, the defendant got out of the car and shot McKeithen with a shotgun. The defendant testified that as he was stopping his car he saw a flash when he looked in the rearview mirror and assumed it was a gun. Further, he testified that McKeithen was trying to hit the kill switch on the motorcycle, put the kick stand down, and at the same time, he was starting to point a gun at him. Godwin testified that while he couldn't really see McKeithen's hands, he thought that he did not have the gun in his hands at that time. At the time of the shooting, however, Godwin had told another man present at the scene shortly after the shooting that McKeithen was reaching to pick up the gun when the defendant got out of the car. He made a similar statement to the sheriff of Kemper County six days after the incident. On the witness stand Godwin claimed to not remember giving that statement although he admitted that his signature was on it. He also testified that he picked up the gun after the shooting because it was lying on the ground under the motorcycle. When the defense attorney asked Godwin how the pistol got onto the ground if McKeithen didn't have it in his hand, he explained that McKeithen's foot must have knocked it out of the saddlebag when he fell off the motorcycle after being shot. McKeithen was barefooted at the time of the incident and apparently the gun weighed some six and a half pounds.
Bobby Thompson, a person who happened to be 250 or 300 feet away from the incident, testified that he could see McKeithen's hands in his rear view mirror and he didn't see any gun. Other members *683 of Thompson's family who were with him at the time, generally corroborated this testimony. The only other person in close proximity to the shooting, Larry Storey, the companion of the defendant that day, could not see McKeithen's hands during the incident. Storey also testified that when the car stopped, the defendant said, "This is it," and got out of the car and fired the shotgun immediately. Storey also admitted to being drunk at the time of this incident.
While we are not willing to say that no reasonable juror could have convicted the defendant of manslaughter under these facts, the evidence is, in our opinion, exceedingly unconvincing that the shooting was not justified. See, e.g., Leflore v. State, 44 So.2d 393, 395 (Miss. 1950); Simmons v. State, 206 Miss. 535, 40 So.2d 289 (1949). Godwin told at least two people that when he jumped from the back of the motorcycle to take cover, McKeithen was reaching for the pistol. On the witness stand he denied making these statements but was forced to admit that he signed a written statement to that effect. The fact that the gun was found on the ground near McKeithen's body certainly does not bolster Godwin's testimony and the best thing that can be said about his explanation for the location of the gun is that it is unconvincing. Under these facts, we feel compelled to reverse and remand for a new trial before another jury.
REVERSED AND REMANDED.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, and ANDERSON, JJ., concur.
PITTMAN, J., and ROY NOBLE LEE, C.J., dissent with separate written opinion.
PITTMAN, Justice, dissenting:
The Court appears to reverse the defendant's manslaughter conviction on grounds that the jury verdict was against the weight of the evidence. To grant the defendant a new trial on these grounds, the Court must determine that:
the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983). Any less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system.
Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983). Furthermore, when making the above determination, this Court must:
accept as true all the evidence which supports the State's position, together with all inferences reasonably flowing therefrom, in the light most favorable to the State's theory of the case.
Britt v. State, 520 So.2d 1377, 1379 (Miss. 1988).
Looking at the evidence in the light most favorable to the State's theory of the case, it is apparent that the verdict was not against the overwhelming weight of the evidence. Robert Kirkland testified that when he looked into his vehicle's rearview mirror, he saw what he assumed was a gun in Larry McKeithen's hand. He next testified that he witnessed decedent McKeithen trying to hit the kill switch on the motorcycle, put the kickstand down and wield a pistol in his direction all at the same time. This unconvincing testimony was reasonably disregarded by the jury in this matter. The jury's role in just such a situation was recently enumerated in Harris v. State, 532 So.2d 602 (Miss. 1988). This Court stated:
Neither the wisdom of Solomon nor the combined intellect of an appellate court could decide the issue of guilt. Only a juror from the county at large, after observing the demeanor or the witnesses, hearing the testimony, and considering all the evidence under proper instructions on the law from the trial judge could resolve that issue. This is as it should be. An appellate court should not and cannot usurp the power of the factfinder/jury where, as here, the evidence is so conflicting.
Harris, 532 So.2d at 603.
Looking at the evidence in the light required by established case law, I would *684 find that the jury was correct in its assessment of the evidence in this matter. I would affirm the judgment of the trial court.
ROY NOBLE LEE, C.J., joins this dissent.