# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-KA-00039-SCT

*ANDRE J. JONES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/10/2008 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | LESLIE S. LEE |
| | MICHAEL DUANE MITCHELL |
| | BENJAMIN ALLEN SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LISA LYNN BLOUNT |
| DISTRICT ATTORNEY: | ANTHONY J. BUCKLEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/13/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., DICKINSON AND PIERCE, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     This appeal proceeds from the Circuit Court of Jones County, Mississippi, where a jury convicted Andre J. Jones of the July 17, 2007, murder of Eric Rogers. Circuit Judge Billy Joe Landrum sentenced Jones to life in the custody of the Mississippi Department of Corrections. After denial of post-trial motions, Jones appealed, raising the following two

issues: whether the **Weathersby**[1] rule applies, and whether there is sufficient evidence to support the verdict. After review, this Court affirms the ruling of the trial court.

## STATEMENT OF THE FACT

¶2.    On July 17, 2007, Eric Rogers was killed by a stab wound to the right side of his neck. Testimony as to the events that led up to the death of Rogers is conflicting.

*Testimony of Andre Jones*

¶3.    The defendant, Andre Jones ("Andre") testified that on the morning of July 17, 2007, Vernon Barnes ("Vernon"), Eric Rogers ("Eric"), Brandon Jones ("Brandon"), Chris Jones ("Chris"), and Cadaro Gavin ("Cadaro") came by his home. Andre asked Vernon for a ride and got in the car. Andre admits that he and Eric, who also was sitting in the front seat of the car, started arguing. After reaching their destination, Andre parted company with the others sometime after 10:00 a.m. Andre later rejoined the group around 7:30 that evening. After driving around and visiting a store, the group ended up back at Vernon's and Eric's house.

¶4.    After arriving at the house, Andre stood next to the carport, drinking a beer. He was approached by Eric, who said that he did not appreciate how Andre had been talking to him. Eric then swung and knocked Andre to the ground. As Andre was lying on the ground, Eric got on top of him and hit Andre's head against the ground. Andre did not know where Eric went when Eric got off of him.

---

[1]**Weathersby v. State**, 147 So. 481, 482 (Miss. 1933).

2

¶5.    When Andre first got up from the ground, he thought his head was bleeding.  Andre went to the porch and asked Vernon to let him in the house so that he could check on his head.  Vernon declined.  Then, as Andre was standing on the porch, Eric snatched the door open, holding the knife in his hand.  Once Andre realized that Eric had a knife, they began "tussling."

¶6.    Andre explained that he did not run away because he had feared that Eric "was so close up on" him when he opened the door, that Andre would not be able to get away.  He instead grabbed Eric, and they began to wrestle inside the house.  They both fell to the floor.  Eric did not get up after the fall, but Andre jumped up and  grabbed the knife.  Vernon then came to the door and, after seeing what had happened, told Cadaro to go get his gun out of the trunk.  Andre walked outside, past Vernon, then down the street.

¶7.    Andre testified at trial that no one was close enough to him to see what had happened. He stated that Vernon was standing near the carport, Cadaro was standing over by the car, and his two nephews were standing out in the yard. Andre  also testified that after he left the house and walked down the street, he saw some people with whom he wanted to catch a ride, so he threw down the knife. Andre testified that he never went to the kitchen to get the knife and that he never had possession of the knife until the fight was over.

*Testimony of Vernon Barnes*

¶8.    Vernon testified that Andre called him on the morning of July 17  and asked him to come by his house to pick him up.  After Vernon picked up Andre, Eric got in the front seat. Andre then  told Eric to get in the back seat, which he did. As Eric was getting in the back

3

seat, he stuck out his hand at Andre and told Andre that he respected him and that he was going to go ahead and get in the back. They stopped at a store on the way home. While at the store, Vernon stated that there was a lot of "ragging going on" between Andre and Eric. Eric did not respond to Andre's taunts.

¶9.     When they got to Vernon and Eric's house, sometime after 7:30 p.m., Andre was still "ragging on" Eric. Eric walked to the road to try to get away from everybody, but Andre followed him and continued to rag on him. Andre then punched Eric, who punched Andre back, knocking Andre to the ground. While Andre was on the ground, Eric grabbed him and told him to leave him alone. Eric then got up and went inside the house.

¶10.    The electrical power at the house was out, and Vernon claimed nothing could be seen inside the house. Vernon had left the window open so that Eric would be able to get in and out of the house if no one else was home. However, Vernon later admitted that there was some light coming in the house from a streetlight. Eric entered the house through the unlocked front door, locked it behind him, but then later unlocked it. Andre and Vernon then entered the house. In the dark house, Eric kept asking Andre to leave him alone, while Andre was walking around holding his head. Then Andre walked past Vernon to go to the kitchen. Vernon saw Andre punching Eric when Andre came back from the kitchen, however, Vernon testified that it was dark in the house and he did not actually see Andre stab Eric. When Eric's body hit the floor, Vernon and Andre ran from the house and Vernon called 911. Vernon did not know where Andre went after they fled the inside of the house.

4

¶11. On cross-examination, Vernon testified that Andre had entered the house through the front door and that all of the men, who were several feet behind Andre, had entered the house after him. He also testified that Andre had licked the blood off of the knife as he came outside. Vernon said that there had been enough light from the street light to see faces and to get around the house.

*Testimony of Chris Jones*

¶12. Chris testified that, after Vernon picked up Andre, Andre told Eric to let him sit up front so that he could be ready to get out. Eric then got in the back. Chris also testified that Eric told Andre that he "ain't going to need to fight" him. He also remembered Eric trying to shake Andre's hand, but Andre refused to shake it. Chris stated that the men were not arguing in the car. When they reached Vernon's house, Eric got out and went to the street to smoke a cigarette. Andre followed him, said something to him, and they began to fight. Eric got on top of Andre, but Andre punched him and made Eric bleed. Eric got up, went into the house, and locked the door. Andre wanted a towel, so he went in to the house through the window. Andre then unlocked the door and everyone went in, but Chris stayed outside. While outside, Chris heard faint bumping coming from the house, and then everyone ran out.

¶13. The men all went back and looked inside the house. There, they saw Eric lying in a pool of his own blood. After they ran out of the house, Cadaro, Andre, Vernon, and Chris jumped into the car. Chris said he did not really remember much after that, claiming he was in shock.

5

*Testimony of Officer Michael Reaves*

¶14. In addition to the three eyewitnesses called to testify, the State also called others to testify as to the forensic evidence. Michael Reaves, an investigator with the Laurel Police Department, was called to the stand. At the crime scene, he had observed that Eric's body was located "just at the feet of the front door." His body was lying face-down with his hands by his sides in a large pool of blood. Reaves also noticed what he believed to be arterial blood spray along the walls near the body. He testified that as he was examining the body, he was unable to find any other wounds aside from the fatal stab wound.

¶15. During his testimony, Reaves stated that the blood spatters on the door would be consistent with the door being open at the time of the stabbing. Blood droplets also were found near the entrance to the hallway that led to the bedrooms. The police were able to recover the knife from "around the corner." The twelve-inch, general-purpose kitchen knife was found with little to no blood on it. However, some spots were located on the sharp edge of the knife. Reaves also testified that Andre's clothing and the knife were sent to the Mississippi Crime Lab for examination. Test results showed that Eric's blood was on the knife; however, Andre's DNA was not on the knife. No testing was done on the clothing sent to the crime lab.

¶16. Reaves testified on cross examination that there was enough light in the house to get around the house, and that he had to use his flashlight only at certain points. He did, however, have to bring in portable lighting to finish the investigation. He also admitted that no fingerprint testing was done on the block of knives or the knife that was used to stab Eric.

6

*Testimony of Dr. Steven Hayne*

¶17.    Dr. Steven Hayne, a medical examiner at the time of Eric's death, also was called to testify.  He testified that the stab wound crossed Eric's body slightly downward, going into the chest wall, and had a depth of five inches.  The knife went through the arch of the aorta as well as the upper lobe of the right lung.  The stab wound was fatal.

¶18.    The jury found Andre guilty of murder, and he was sentenced to life in prison.  Andre appeals his conviction and sentence to this Court and raises two issues on appeal.

¶19.    First, Andre argues he should be acquitted as a matter of law pursuant to the rule found in *Weathersby v. State*, 147 So. 481, 482 (Miss. 1933), and its progeny, because  he was the only person present when Eric was stabbed.   Jones claims  the State's only witness who was present during the stabbing could not see what was happening due to the darkness inside the house.   Andre also contends that his version of the events that night was not substantially contradicted by the evidence, and therefore he was entitled to an acquittal as a matter of law.

¶20.    Second,  Andre argues that the weight of the State's evidence fails to support a guilty verdict for murder.  Therefore, the verdict should be reversed or reduced to manslaughter, even when viewing the State's evidence in the best possible light.

**ANALYSIS**

I.    The *Weathersby* Rule

¶21.    Andre  contends that he should have been acquitted as a matter of law pursuant to the *Weathersby* rule.  In *Weathersby*, the Court held:

> [W]here the defendant or the defendant's witnesses are the only eye witnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by physical facts or by the facts of common knowledge.

*Weathersby v. State*, 165 Miss. 207, 209, 147 So. 481, 482 (1933).

¶22. As stated in *Johnson v. State*, 987 So. 2d 420, 425 (Miss. 2008), this Court has held that there are some circumstances where, even though the defendant and his witness are the only eyewitnesses to the homicide, the *Weathersby* rule would not apply. The Court narrowed the application of the *Weathersby* rule by stating that it would be unavailable "where the defendant's version is patently unreasonable, or contradicted by physical facts . . . where the accused, following the slaying, gives conflicting versions of how the killing took place; or he initially denies the act." *Johnson*, 987 So. 2d at 425 (citing *Blanks v. State*, 547 So. 2d 29, 33-34 (Miss. 1989). In situations where the rule becomes inapplicable, the case then becomes an issue for the jury. The jury is to determine if the defendant's testimony is the more credible version of events and to decide either to convict or to acquit. *Johnson*, 987 So. 2d at 425 (citing *Blanks v. State*, 547 So. 2d 29, 33-34 (Miss. 1989)).

¶23. Andre contends that his version of the events from the night in question is reasonable and is not materially contradicted by the other evidence. A review of the record indicates otherwise. While the testimony of Vernon and Chris is contradictory in some respects, it also materially contradicts Andre's testimony. While Andre testified that Eric approached him when the men arrived at Vernon's house, both Vernon and Chris testified that Eric had walked away from Andre, but then Andre had followed him, and a fight had ensued. Vernon

8

and Chris also testified that Eric was the first person to enter the house, and that Andre subsequently followed him. However, Andre testified that it was Eric who opened the door. Vernon testified that, once inside the house, Andre went to the kitchen, grabbed the knife, and attacked Eric when he returned to the living room. Andre, on the other hand, testified that when Eric opened the door, he had a knife in hand, and the fight ensued. Clearly, the testimony that Vernon and Chris provided was in direct contradiction to the testimony of the defendant.

¶24. Further, the physical evidence provided by the State also materially contradicted the testimony of the defendant. Andre testified that Eric had opened the door with a knife in hand and the fatal altercation had begun there. However, Officer Reaves testified that blood droplets were found near the doorway leading to the bedrooms. This is consistent with Vernon's testimony that Eric and Andre started to fight after both were inside the house. Officer Reaves further testified that there was enough light in the house to maneuver around the house easily, and that the block of knives easily could be seen as one walked into the kitchen.

¶25. Because Andre's testimony was substantially contradicted by the testimony of the State's witnesses and physical evidence, the *Weathersby* rule is inapplicable. The case was a matter for the jury to decide. The jury accepted the State's version of events and found Andre Jones guilty of murder. Therefore, this assignment of error is without merit.

**II.    The Murder Verdict was not Supported by the Evidence.**

9

¶26. Andre argues that the weight of the evidence presented does not support a finding of murder. He argues that the evidence supports a finding that he acted in self-defense and that he had no deliberate design to murder Eric. He argues alternatively that the evidence presented meets the elements of manslaughter and should be considered a heat-of-passion crime. However, the State contends that the evidence presented is sufficient to support the elements of murder.

¶27. This Court has made it clear that a conviction will be reversed only if "to allow [the conviction] to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (Miss. 2005). Further, this Court has said, "in considering whether or not the verdict of a jury was contrary to the overwhelming weight of the evidence, this Court must accept as true all the evidence which supports the State's position, together with all inferences reasonably flowing therefrom, in the light most favorable to the State's theory of the case." *Britt v. State*, 520 So. 2d 1377, 1379 (Miss. 1988) (citing *Haymond v. State*, 478 So. 2d 297, 300 (Miss. 1985)). In the instant case, the State has proved that Andre did not act in self-defense, nor did he lack deliberate design. The State also proved that Andre did not act in the heat of passion and that the evidence was sufficient to meet all the elements of murder. The evidence showed that Andre was the aggressor and instigator throughout the day. Evidence indicated that there was no provocation from Eric, and Andre had intent the moment he engaged Eric in the fight with the knife. Therefore, the verdict of the jury is not so contrary to the evidence that allowing it to stand would be an unconscionable injustice.

10

The verdict is supported by the weight of the evidence, and therefore, this assignment of error is without merit.

### A. Self-Defense

¶28. In order for a homicide to be justified as self-defense, the actor's apprehension of danger must appear objectively real to a reasonable person of average prudence. *Hart v. State,* 637 So. 2d 1329, 1339 (Miss. 1994). This Court, in *Wade v. State*, 748 So. 2d 771, 775 (Miss. 1999), held that the issue of justifiable self-defense presents a question of the weight and credibility of the evidence, rather than sufficiency, and is to be determined by jury. This Court further stated that "any factual disputes are properly resolved by the jury and do not mandate a new trial." *McNeal v. State*, 617 So. 2d 999, 1009 (Miss. 1993).

¶29. Andre argues that the evidence demonstrates a case of justifiable self-defense. Andre contends that, taking the State's case in the best possible light, no reasonable juror could convict Andre of murder. The State argues that the evidence presented shows that the death of Eric was not in self-defense and should be considered murder.

¶30. Andre testified at trial that the fatal fight had started when Eric had opened the door to the house with knife in hand. Rather than run away, Andre chose to engage Eric, because he felt that Eric was too close for him to run. He also testified that in their struggle, Andre and Eric fell, and Eric did not get up. The State presented evidence that it was Andre who grabbed the knife once he entered the house, and that Andre was the aggressor in the attack. The jury was presented with both versions of the events. The jury resolved the factual disputes and found Andre guilty of murder. The jury's proper resolution of the factual

11

disputes in the case does not mandate a new trial. Therefore, this assignment of error is without merit.

### B. Deliberate Design

¶31. Andre also argues that the State failed to establish sufficient evidence to demonstrate deliberate design to commit murder, and therefore, the theory of "imperfect self-defense" should be applied to the case, as set out in *Wade v. State*, 748 So. 2d 771, 775 (Miss. 1999) (citing *Lanier v. State*, 684 So. 2d 93, 97 (Miss.1996)).  The State contends that the elements of murder were proved by the evidence presented and the conviction of murder is proper.

¶32. To prove murder, the State must show that a person was killed without the authority of law, and the killing was done with the deliberate design to effect the death of the person killed or of some other person.  Miss. Code Ann. § 97-3-19(1)(a) (Rev. 2006).  The Court has defined deliberate design, stating that "'deliberate' always indicates full awareness of what one is doing, and generally implies careful and unhurried consideration of the consequences. 'Design' means to calculate, plan, contemplate . . . deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent." *Gossett v. State*, 660 So. 2d 1285, 1293 (Miss. 1995) (quoting *Windham v. State*, 520 So. 2d 123, 127 (Miss. 1987)).  This Court further clarified the definition of deliberate design by stating,  "Deliberate design, as a matter of law, may be inferred through the intentional use of any instrument which based on its manner of use, is calculated to produce death or serious bodily injury." *Wilson v. State*, 936 So. 2d 357, 364 (Miss. 2006) (citing *Jones v. State*, 710 So. 2d 870, 878 (Miss. 1998)); *Fairchild v. State*, 459 So. 2d 793, 802 (Miss. 1984)).

¶33.    Andre relies on *Kirkland v. State*, 573 So. 2d 681 (Miss. 1990) in support of his argument that there was a  lack of deliberate design.   The *Kirkland* Court reversed a manslaughter conviction and ordered a new trial on the finding that the weight of the evidence did not support the manslaughter verdict.   In *Kirkland*, the victim had been the aggressor throughout the day and was armed at the time of the fight. *Id.* at 682.  The two men also had a history of violence between them, including a time when the victim had rammed the defendant's car in an attempt to push him into oncoming traffic, then later had beaten him up. *Id.* at 682.  On the day he died, the victim followed Kirkland, and a fight ensued at a stop sign.  *Id.*  Given the men's violent history and the fact that the victim had followed the defendant and was armed, the Court was convinced that the shooting could be seen as justified and remanded the matter for a new trial.

¶34.    In the instant case, Andre was the aggressor throughout the day.  Andre and Eric also had no prior history of violence.   It is Andre's contention that Eric had the knife first and that during the course of the fight, the two men fell, and the knife penetrated Eric's body. Unlike the facts presented in *Kirkland*, Andre had a chance to run away and avoid the fight. Instead, he followed Eric into the house and engaged him in a knife fight.

¶35.    It is also important to note that Andre's "tussling" with a knife demonstrates deliberate intent.   The knife was a deadly weapon, and Andre knew the dangers of fighting with such a weapon and should have been aware that use of the knife could result in serious bodily injury or death.  *Wilson v. State*, 710 So. 2d 357,  364 (citing *Jones v. State*, 710 So. 2d 870,

13

878 (Miss. 1998); *Fairchild v. State*, 459 So. 2d 793, 802 (Miss. 1984)). Therefore, this assignment of error is without merit.

### C.    *Heat of Passion*

¶36.    Andre claims that he acted "in the heat of passion" when Eric died.  This Court defined "heat of passion" in *Mullins v. State* as;

> A state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from a grade of murder to that of manslaughter.  Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time.  The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.

*Mullins v. State*, 493 So. 2d 971, 974 (Miss. 1986).  One of the primary elements of a heat-of-passion crime is "immediate and reasonable provocation, by words or acts of one at the time."  This Court has held that "it is essential that the excited and angry condition of the party committing the act which would entitle him to the milder consideration of the law, should be superinduced by some insult, provocation, or injury, which would naturally and instantly produce, in the minds of ordinarily constituted men, the highest degree of exasperation."  *Preston v. State*, 25 Miss. 383, 387 (1853).  This Court further held that "there must not only be passion and anger to reduce a crime to manslaughter, but there must be such circumstances as would indicate that a normal mind would be roused to the extent that the reason is overthrown and that passion usurps the mind destroying judgment."  *Windham v. State*, 520 So. 2d 123, 127 (quoting *Calvin v. State*, 168 So. 75 (1936)).

14

¶37. In support of his argument that Eric was slain in the heat of passion, Andre relies heavily on *Wade v. State,* 748 So. 2d 771 (Miss. 1999). However, *Wade* also is distinguishable from this case. In *Wade*, it was the victim who was the aggressor. The victim, Simpson, had a four-year history of abusing Wade. On the night in question, Simpson instigated the altercation by severely beating Wade's head against tables shortly before the shooting.

¶38. In this case, there is evidence that Andre "was on" Eric all day. Vernon and Chris testified that Andre had forced Eric to sit in the back seat of the car and that Andre had followed Eric when Eric had tried to walk away. Vernon and Chris also testified that Eric had tried to shake Andre's hand but Andre had refused. This continued aggression toward Eric, with no prior history of conflict, is enough to demonstrate malice and distinguish this case from *Wade*.

¶39. In the current case, there was no immediate or reasonable provocation. Evidence shows that Andre was the aggressor throughout the day. He provoked fights with Eric. Andre contends that there was no cooling-off period between the fight outside and when he entered the house. Andre further contends that there was some provocation by the victim, and that he reacted with more-than-reasonable force, resulting in Eric's death. However, there was no evidence of provocation from Eric. Andre followed Eric to the street, they fought, and Andre then followed him to the house. The State presented evidence that Andre grabbed the knife first, without provocation from Eric. Neither version of the story supports a claim of heat-of-passion manslaughter. This is not a circumstance in which passion

15

usurped the mind and destroyed judgment. Andre was fully aware of what he was doing when he engaged in a knife fight with Eric. Therefore, this assignment of error is without merit.

### III. The Evidence was Insufficient to Support the Verdict.

¶40. Andre Jones also mentions, in passing, that the evidence presented by the State was insufficient to support the conviction. The critical inquiry when considering the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Morris v. State*, 927 So. 2d 744, 748 (Miss. 2006) (citing *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005)). In the instant case, there was testimony that Andre was the first person to grab the knife and that he attacked Eric. The case largely consisted of the State's witnesses' testimony against Andre's testimony. This presents a factual dispute to be resolved by a jury. We cannot conclude that any rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt, when the evidence is viewed in the light most favorable to the State. Accordingly, this assignment of error is without merit.

### CONCLUSION

¶41. The State presented witness testimony and physical evidence that contradicted Andre's testimony, thereby rendering the *Weathersby* rule inapplicable. The State presented evidence that Andre did not act in self defense, nor did he lack deliberate design. Through

16

the evidence presented, the State was able to prove Andre Jones's action in Eric Rogers's

death fit every element of murder. The judgment of the trial court is affirmed.

¶42. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS AND CHANDLER, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY.**