# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-KA-01126-SCT

*ROY MILTON PAGE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/26/2010 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY:  JUSTIN TAYLOR COOK |
| | LESLIE S. LEE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| | SCOTT STUART |
| DISTRICT ATTORNEY: | PATRICIA BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/30/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.    On November 5, 2008, Officer Timothy Slade arrived at 301 McSwain Street, Hattiesburg, in response to a 911 call.  At the scene, Slade observed a male sitting in the driver's seat of a Kia Sorento, facing forward. The victim, Ray Spillman, ("Spillman"), was suffering from a gunshot wound to the left side of his head and did not appear to be breathing.  Slade also observed that the driver's side window was shattered in on the victim, indicating  that the window had been up when Spillman was shot.  After advising dispatch

that an ambulance was needed, Slade, along with other officers who had arrived, separated the witnesses into separate vehicles until their statements could be taken. Cassandra Spillman ("Cassandra"), a witness on the scene, identified the man in the car as her husband, Spillman. Another witness on the scene identified the shooter as Roy Page and told Slade that Page had run away from the crime scene. Cassandra is also Page's sister.

¶2. Detective Eric Proulx, while in route to the crime scene, was advised by dispatch that the shooter had been spotted at 1109 Deason Avenue, so he changed his course to help with the apprehension of the suspect. As he pulled up at Deason Avenue, Proulx saw Officer Sybert placing Page in handcuffs. While he was being handcuffed, Proulx heard Page say, "I did it. It was self-defense." After Page was placed under arrest the officers on the scene of the arrest, recovered a nine-millimeter handgun that was lying on the ground and one round of nine-millimeter ammunition from Page's left pocket.

¶3. Jeff Byrd, an investigator with the Bureau of Forensic Services, was called to the scene of the shooting to investigate.[1] Byrd and his team began to photograph the scene. One of the pictures of the scene shows that the front passenger door was left open. The picture also shows the house located at 301 McSwain Street behind the Kia, with the couch on the front porch. In another photograph, a cigarette lighter is shown in Spillman's right hand. In addition to taking the photographs, Byrd and his team also found a nine-millimeter shell casing. The shell casing was located on the ground, several feet from the left rear tire. At

---

[1]The Bureau of Forensic Services ("BFS") was created through a $2 million grant to the University of Southern Mississippi. The BFS was a collaboration between Forrest, Lamar and Perry county sheriff's offices, the Forrest General Hospital police, the Southern Miss police, and the Hattiesburg and Petal police departments to investigate crime scenes. Jessie Bass, *Forensic Services Group to Disband*, The Hattiesburg American (May 31, 2011).

no point in their investigation did Byrd or his team find a weapon in Spillman's vehicle or on his person.

¶4.    Dr. Staci Turner, the State's forensic pathologist, ruled Spillman's cause of death to be a gunshot wound to the head.  She further testified that the manner of his death was homicide. When cross-examined at trial by Page's attorney, Dr. Turner testified that, while she was not able to determine how far away the gun was from Spillman's head when it was fired, she was able to determine that the gun had been either more than three feet away from Spillman's head or that an object had been interposed between the end of the gun and Spillman's head when the gun was fired.  Dr. Turner also testified that the side glass window of a car could be considered an interposed target.

¶5.    Lori Beall, a forensic scientist for the Mississippi Crime Laboratory who specializes in firearms and tool-mark identification, confirmed that the bullet that killed Spillman had come from Page's gun.

¶6.    Charles Dykes, the owner of Discount Pawn, testified that Page had purchased the nine-millimeter gun from his shop. He identified the receipt from the purchase and matched the serial number of the gun from the receipt to the serial number of the gun recovered by the police. The date on the receipt is October 17, 2008.

¶7.    At trial, Page testified that friction had existed between Spillman and himself, mostly stemming from Page's belief that Spillman was abusing Cassandra. He also testified that, three to four weeks before the shooting, he and Spillman had been in a physical altercation. At the time of the altercation, they had been at 301 McSwain Street, Page's mother's house. As Page was sitting at the front door, Spillman had come in and pushed him and challenged

3

him. Spillman then had walked close to Page's car with a razor in his hand. Page, anticipating that Spillman was about to damage his car, had grabbed a stick and chased Spillman for about a block. Page then had put down his stick and two of them had begun to fight. During the fight, Page had been cut with the razor and needed to have thirty stitches. As he was leaving, Page claims that Spillman had told him that he was going to kill him.

¶8.     Page testified that, several days after the first violent altercation, he had gone to Discount Pawn in Pearl, Mississippi, and had purchased the High Point nine-millimeter pistol that was used to kill Spillman.   He further testified that he had purchased hollow-point bullets for the gun from Wal-Mart.

¶9.     Page then testified that, on November 5, 2008, he had gone to Leticia Carson's house to find Spillman so the two of them could talk and make the situation between them better. On cross-examination, Page admitted to having had his gun on his person when he arrived at Carson's house. Spillman was not at Carson's house. After leaving Carson's house, Page drove to his mother's house, then to a bar down the street. After a few beers, he started to walk to his aunt's house. In route to his aunt's house, Page testified that he was attacked by Spillman and a few of Spillman's friends. Page claimed that the men pushed him down and started kicking him. He further testified that Spillman had kicked him in the stomach. Page testified that, as a result of the attack, he had vomited and had a bloody mouth. After the attack, Page went back to the bar, got in his car and drove to his mother's house.

¶10.    Once at his mother's house, Page sat on the couch that was located on the front porch. However, before leaving, Page went and grabbed his gun from his car and sat back down on the couch. Fifteen or twenty minutes later, Spillman and Cassandra pulled up.  Page  testified

4

that Cassandra entered the house, closing the door behind her.  Once she was inside, Page claimed that Spillman said to him "What's up, you punk ass bitch."  Then, Page walked toward the car to let him know "that the situation wasn't about nothing and it would be all right."  As he approached the vehicle he saw Spillman reach over to the right and saw something metallic reflecting in the light. Fearing that Spillman had a gun, Page "backed up and I pulled my gun out of my pocket.  And when I pulled it out of my pocket, I cocked it.  And when I cocked it, I just shot and started running."  Page claimed that he was merely trying to distract Spillman so that Spillman would not shoot him. After shooting Spillman, Page went to Fredrick Burns's house.

¶11.    At trial, Burns testified that on November 5, 2008, he was at home  around 8:00 p.m. when Page knocked on his door.  When Burns opened the door, Page immediately started talking to him.  Burns stated that Page had told him that he had come to Burns's house to kill him, but that he had changed his mind. He then went on to say that he had shot someone and that the person was dead. Once Burns was able to get the gun away from Page, he called the police.

¶12.    Cassandra's testimony at trial varies from that of her brother.  In describing the fight that had happened several weeks prior to Spillman's death, Cassandra stated that Page had grabbed something that looked like either an ax or shovel and then had chased Spillman down the street. She then stated that "when he swung, if my husband wouldn't have ducked, it would have cut his head off." The fight had ended when Page fell to the ground and Spillman cut Page somewhere on his hand.

5

¶13.    Cassandra's testimony again varies from that of her brother's when describing the events on the night of November 5, 2008.  Cassandra testified that as she was approaching her mother's front door, Page had already gotten off of the couch and had grinned at his sister as he walked past her. She told him "Don't go messing with my husband."  She further testified that, as she was walking past him, it looked like he was fixing his shirt inside of his pants. By the time Cassandra had reached the front door, she saw Page going back on the driver's side of the Kia.  As Cassandra stood in the doorway talking to her mother, she heard a gunshot. Cassandra ran out to the car and said to Page, "You done shot my husband." Page then took off running.  Cassandra testified that she did not hear any conversation between the two men and explained that the driver's window was up and that Spillman was still on the phone.

¶14.    After both the State and the Page rested their cases, the jury members were given their instructions.  Included in their instructions were an instruction for manslaughter and an instruction for self-defense.  The jury found Page guilty of murder, and the judge sentenced him to life in prison.  Page now appeals.

## STATEMENT OF THE ISSUES

I.    **Whether the evidence is sufficient to support the verdict.**

II.   **Whether the verdict is against the overwhelming weight of the evidence.**

III.  **Whether the overwhelming weight of the evidence supports a conviction of manslaughter.**

IV.   **Whether the *Weathersby* rule applies.**

¶15.    Due to the similarities of issues II and III, they will be discussed together.

**ANALYSIS**

**I.    Whether the evidence is sufficient to support the verdict.**

¶16.    When a challenge arises with regard to the sufficiency of the evidence, "the critical inquiry is whether the evidence shows 'beyond a reasonable doubt that the accused committed the act charged, and that he did so under circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to meet a conviction.'" **Bush v. State**, 895 So. 2d 836, 843 (Miss. 2005) (quoting **Carr v. State**, 208 So. 2d 886, 889 (Miss. 1968)).  In determining if the evidence is sufficient to support the verdict, the critical query before the Court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." **Jones v. State**, 39 So. 3d 860, 867 (Miss. 2010) (citing **Morris v. State**, 927 So. 2d 744, 748 (Miss. 2006)).

¶17.    It is important to note that this review does not require the Court to

> ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

**Bush**, 895 So. 2d at 843 (quoting **Jackson v. Virginia**, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (citations omitted) (emphasis in original).  If the Court should determine that the facts are not sufficient to support the verdict, then the "proper remedy is for the appellate court to reverse and render." **Bush**, 895 So. 2d at 843.

¶18.    In reviewing the evidence in the light most favorable to the prosecution, we find sufficient evidence to convict Page of murder.  Mississippi Code Section 97-3-19(1)(a)

7

states: "the killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases: (a) when done with deliberate design to effect the death of the person killed, or of any human being. . . . Miss. Code Ann. § 97-3-19(1)(a) (Rev. 2006).

¶19. The physical evidence presented by the State indicated that Spillman was sitting in his car, with his window up, facing forward, when he was shot. Page testified that he shot Spillman in self-defense after he believed that Spillman was reaching for a weapon. Cassandra testified that, several weeks prior to the shooting, Page and Spillman had been involved in a violent fight in which Page had grabbed something like a shovel or an ax and had chased Spillman down the street. Cassandra further testified that, on the night of the murder, as she had approached the door of her mother's house, as Page had walked passed her, it had looked like Page was fixing his shirt inside of his pants. Cassandra then saw Page go to the driver's side of the Kia. Experts testified that the gun used to kill Spillman was the gun recovered from Page when he was arrested.

¶20. It was the duty of the jury to reconcile the testimony with the physical evidence presented in deliberation.

¶21. Therefore, in considering the evidence in the light most favorable to the prosecution, this Court finds that the evidence was sufficient to support a verdict of murder.

### II. and III. Whether the verdict is against the overwhelming weight of the evidence.

¶22. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the

8

overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable justice." *Bush*, 895 So. 2d at 844. In determining if the weight of the evidence supports the verdict, the Court weighs the evidence in the light most favorable to the verdict. *Bush*, 895 So. 2d at 844. "The motion is addressed to the sound discretion of the court; a new trial should be granted only in exceptional cases when the evidence preponderates heavily against the verdict." *Bush*, 895 So. 2d at 844 (quoting *Amiker v. Drugs For Less, Inc.*, 796 So. 2d 942, 947 (Miss. 2000)).

¶23. Page argues that the murder conviction was against the overwhelming weight of the evidence. Page further argues that "the overwhelming weight of the evidence established that Page shot Spillman in necessary self-defense" or, in the alternative, that the "overwhelming weight of the evidence supports Page's conviction for manslaughter rather than murder." Page's arguments lack merit.

¶24. "In order for a homicide to be justified as self-defense, the actor's apprehension of danger must appear objectively real to a reasonable person of average prudence." *Jones v. State*, 39 So. 3d 860, 865 (Miss. 2010) (citing *Hart v. State*, 637 So. 2d 1329, 1339 (Miss. 1994)). Further, "the issue of justifiable self-defense presents a question of the weight and credibility of the evidence, rather than sufficiency, and is to be determined by the jury." *Jones*, 39 So. 3d at 865 (quoting *Wade v. State*, 748 So. 2d 771, 775 (Miss. 1999)). In the alternative, for a killing to be considered manslaughter, it must be "without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense." Miss. Code Ann. § 97-3-35 (Rev. 2006).

9

¶25. The State sought to prove that Page had murdered Spillman, and it produced evidence to support its claim. In addition to the evidence previously discussed, the State also presented the testimony of Byrd, an investigator for the Bureau of Forensic Services. Byrd testified that Spillman was unarmed and that there had been no weapons in his vehicle. He further testified that Spillman was holding a lighter in his right hand. The State's evidence proved that, at the time of the killing, there was no physical altercation between the two and that Spillman's window was up.

¶26. Page testified that he and Spillman had a history of friction and that he saw Spillman reaching for something metallic as he was approaching the vehicle on the night of the killing. Fearing for his life, Page then shot Spillman.

¶27. The jury members were given instructions on self-defense and manslaughter. During deliberations, the jury weighed the evidence presented and found that the State had proven the elements of murder. Due to the physical evidence and the testimony of the witnesses, we find that the verdict was not against the overwhelming weight of the evidence.

## IV. Whether the *Weathersby* rule applies.

¶28. Under the *Weathersby* rule,

> where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.

*McQuarters v. State*, 45 So. 3d 643, 650 (Miss. 2010) (citing *Weathersby v. State*, 165 Miss. 207, 209, 147 So. 481, 482 (1933). In situations where conflicting eyewitness testimony is

10

presented or physical evidence is presented in opposition to the defendant's claim, "the case then becomes an issue for the jury. The jury is to determine if the defendant's testimony is the more credible version of events and to decide either to convict or to acquit." *Jones v. State*, 39 So. 3d 860, 864 (Miss. 2010) (citing *Johnson v. State*, 987 So. 2d 420, 425 (Miss. 2008)).

¶29. In *Collins v. State*, this Court held that "if an appellant raises for review an issue not raised in the pleadings, transcript, or rulings, the appellant must have preserved the issue by raising it in a motion for new trial." *Collins v. State*, 594 So. 2d 29, 36 (Miss. 1992) (citing *Jackson v. State*, 423 So. 2d 129, 131 (Miss. 1982)). The rationale behind this rule is to allow the trial judge the opportunity to consider the alleged error before the issue is on appellate review. *Collins*, 594 So. 2d at 29 (citing *Cooper v. Lawson*, 264 So. 2d 890, 891 (Miss. 1972)). The record reflects that Page did not bring up the *Weathersby* rule as a defense at trial or in his motion for judgment notwithstanding the verdict. For these reasons, Page is procedurally barred from raising this issue on appeal.

## CONCLUSION

¶30. The evidence presented to the jury was sufficient to support a verdict of murder. The overwhelming weight of the evidence also supports the verdict. Therefore, we affirm the judgment and sentence of the Circuit Court of Forrest County.

¶31. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND KING., JJ., CONCUR.**

11