COLEMAN, Justice,
dissenting:
¶34. Pursuant to Mississippi Rule of Evidence 804(b)(3), the test for whether a statement is against the penal interest of the declarant requires the Court to determine whether the reasonable person would not have made the statement unless the declarant believed it to be true. With respect, I believe the plurality strays from the standard set forth in Rule 804(b)(3) when it holds that because, if charged as an accessory, Graham would not technically have been guilty or, alternatively, would have been able to plead the affirmative defense of duress, the statements contained in the two letters were not against her interest. Accordingly, I agree with the disposition reached by the Court of Appeals and would affirm that court’s reversal of Hartfield’s conviction.
¶ 35. The opinion of the learned and well-trained plurality of the justices on the Court, drafted not only with the benefit of research and training in the law but with time to ruminate upon the case and aided by law clerks, does not necessarily equate to the reasonable person similarly situated to Graham when she wrote the letters at issue, and the fact that the justices of the Court realize she would not actually have been guilty of accessory or would have had a strong affirmative defense available to her does not mean that the “reasonable [woman] in [her] position would not have made the statement unless [she] believed it to be true.” Miss. R. Evid. 804(b)(3). In my opinion, a reasonable person in the position of Graham indeed would not have made the statements she did unless she believed them to be true.
¶ 36. I have searched for, but been unable to find, precedent to guide me authoritatively in defining the reasonable person in a Rule 804(b)(3) context. Many of our cases addressing the statement against interest exception in criminal cases discuss corroboration, e.g., Lacy v. State, below, but few, if any, discuss what it means that the reasonable person would not have made the statements unless he *143 believed them to be true. In other contexts, such as self-defense, we have written that the standard “presupposes an individual without serious mental and emotional defects.” Hart v. State, 637 So.2d 1329, 1339 (Miss.1994) (citing Taylor v. State, 452 So.2d 441, 449 (Miss.1984)). Elsewhere, in a discussion of imperfect self-defense, we have described the reasonable person as one “of average prudence.” Batiste v. State, 121 So.3d 808, 845 (¶ 74) (Miss.2013) (citing Hart, 637 So.2d at 1339); Page v. State, 64 So.3d 482, 488 (¶ 24) (Miss.2011) (“In order for a homicide to be justified as self-defense, the actor’s apprehension of danger must appear objectively real to a reasonable person of average prudence.”) (quoting Jones v. State, 39 So.3d 860, 865 (Miss.2010)).
¶ 37. The theme of prudence conjoined with the reasonable person standard also permeates our discussion of reasonable care in the civil negligence arena. See Eli Investments, LLC v. Silver Slipper Casino Venture, LLC, 118 So.3d 151, 154 (¶ 12) (Miss.2013) (“The standard of care applicable to negligence cases is whether the defendant ‘acted as a reasonable and prudent person would have under the same or similar circumstances.’ ”) (quoting Donald v. Amoco Prod. Co., 735 So.2d 161, 175 (¶ 48) (Miss.1999)).
¶ 38. Another factor from the text of Rule 804(b)(3) worth noting is the following: the circumstances of the declarant matter. Again, the rule provides as follows:
A statement which was at the time of its making so far contrary to the declarant’s pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
(Emphasis added.) The exception applies not just to the reasonable man, but the reasonable man in the position of the de-clarant.
¶ 39. The plurality fails to consider the position in which Graham found herself at the time she wrote the letters. The plurality considers whether the statement was against Graham’s interest not from the objective standard of a person of average prudence, but from the absolute standard of whether, regardless of her position and regardless of what the reasonable woman might have thought in Graham’s position, Graham could have been successfully prosecuted as an accessory. In other words, the plurality’s conclusion, “Because Graham’s statements in her letters were not against her penal interest, they were not admissible under Rule 804(3)(b),” misstates the standard imposed in the rule itself. The conclusion reached under the correct standard would address whether the reasonable woman — as I define her above — in Graham’s position at the time she wrote the letters, would not have made the statements unless they were true.
¶ 40. Finally, I am of the opinion that the Court of Appeals properly cited and followed our opinion in Lacy v. State, 700 So.2d 602 (Miss.1997), wherein we wrote as follows:
Corroboration as required by Rule 804(b)(3) is not required to be absolute, and the sufficiency of the corroboration must be assessed in the light of the importance of the evidence and the of-feror’s fundamental constitutional right to present evidence. In Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038,
*144 35 L.Ed.2d 297 (1973), the United States Supreme Court declared:
Few rights are more fundamental than that of an accused to present witnesses in his own defense. E.g., Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972); Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920 [1923] 18 L.Ed.2d 1019 (1967); In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948). In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. Although perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the introduction of evidence which in fact is likely to be trustworthy have long existed. The testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest. That testimony also was critical to Chambers’ defense. In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.
Id. at 302, 93 S.Ct. at 1049.
Lacy v. State, 700 So.2d 602, 607 (¶ 15) (Miss.1997). I agree with the Court of Appeals’ recitation of the corroborating facts, which reads as follows:
Graham admits cooperation with Dixon and details the steps they took. Graham acknowledged that the conspiracy to kill and bury Tabitha was between herself and Dixon, not Hartfield. In the letter to Hartfield, Graham confesses to assisting Dixon and apologizes for it. In fact, the only evidence of potential guilt against Hartfield is Dixon’s later testimony.
Graham was situated to commit the crime. After her arrest, she admitted to being present for the conspiracy, murder, and burial. She admitted to playing an active role throughout. She knew details of the crime that only a person with direct knowledge would have known. On the other hand, Hart-field testified he was asleep on the couch, a fact that both Graham and Dixon confirmed.
Next, Graham admitted in her letters to taking part in the murder. In Dixon’s statement, he killed Tabitha. Both of these statements occurred shortly after the murder and Graham’s and Dixon’s arrests.
Graham provided all of the details of the murder, which were substantiated by Dixon’s statements to the police, her mother, and Decker. Such close relationships as between Graham and her mother, and Graham and Decker, indicate trustworthiness.
Most importantly, there was independent corroboration. First, Dixon admitted that he committed the murder. Dixon’s admission is consistent with Graham’s description of what happened. Next, Graham’s statement of what happened was consistent with Dr. Steven Hayne’s findings in the autopsy. Finally, the details of the crime were consistent in Dixon’s testimony and Graham’s letters. *145 found in the letters were sufficiently corroborated by other evidence, I respectfully dissent.
*144 ¶ 41. Because I am of the opinion that the plurality applies a legal standard divergent from that set forth in Mississippi Rule of Evidence 804(3)(b), the letters in question were of critical importance to Hartfield’s defense, and the statements
*145 DICKINSON, P.J., KITCHENS AND KING, JJ., JOIN THIS OPINION.